[Cite as *State v. Leftwich*, 2022-Ohio-1153.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

      Plaintiff-Appellee

-vs-

RAYSHAWN LEFTWICH

      Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Patricia A. Delaney, J.
Hon. Craig R. Baldwin, J.

Case No. 20 CAA 12 0056

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Delaware County Court of Common Pleas, Case No. 20 CR I 05 0290 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 5, 2022 |

APPEARANCES:

For Plaintiff-Appellee

MELISSA A. SCHIFFEL
Delaware County Prosecutor

JOEL C. WALKER
Assistant Prosecuting Attorney
145 N. Union Street – 3rd Floor
Delaware, Ohio 43015

For Defendant-Appellant

APRIL F. CAMPBELL
46 ½ N. Sandusky Street
Delaware, Ohio 43015

*Hoffman, P.J.*

{¶1} Defendant-appellant Rayshawn L. Leftwich appeals the December 1, 2020 Judgment Entry of Prison Sentence entered by the Delaware County Court of Common Pleas, which sentenced him to an indefinite period of incarceration of fourteen to nineteen years, following his guilty plea to one count of aggravated robbery with a firearm specification. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} On May 29, 2020, the Delaware County Grand Jury indicted Appellant on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the third degree, with an attendant firearm specification; and one count of theft, in violation of R.C. 2913.02(A)(1), a felony of the fifth degree. The trial court appointed the Delaware County Public Defenders Association and Attorney Adam Chaudry to represent Appellant. Appellant appeared before the trial court for arraignment on June 5, 2020, and entered a plea of not guilty to the Indictment. The trial court scheduled the matter for jury trial on August 11, 2020.

{¶3} On July 9, 2020, Attorney Chaudry filed a motion to withdraw. Via Entry filed July 10, 2020, the trial court granted Attorney Chaudry's motion and appointed Attorney Caleb Carson to represent Appellant. Appellant filed a motion to continue the trial, which the trial court granted and continued the trial until September 8, 2020. Upon the court's own motion, the trial was rescheduled to October 27, 2020. On October 21, 2020, the parties advised the trial court they had reached a plea agreement in which Appellant agreed to plead guilty to Count 1 of the Indictment and the attendant firearm specification and, in exchange, the state would dismiss Count 2.

{¶4}    The trial court conducted a change of plea hearing on October 27, 2020. Appellant appeared via ZOOM videoconference from the Delaware County Jail.  Initially, Appellant had no video capabilities from his terminal at the jail.  Appellant did have audio capabilities and could hear the trial court, his counsel, and the prosecutor and they could hear him.  The trial court took a short recess while the jail staff attempted to fix the issue. The trial court went back on the record and indicated the video component of the videoconference was not working for Appellant, but the audio component was working. The trial court decided to move forward with the hearing.   The trial court waived Appellant's physical appearance in the courtroom pursuant to the Ohio Supreme Court's administrative action issued relative to the COVID-19 pandemic.  Appellant did not object.

{¶5}    The prosecutor placed the plea agreement on the record; defense counsel confirmed such was his understanding of the plea.  The trial court administered the oath to Appellant.  Appellant verified his date of birth, personal identifiers, education level, ability to read and write, and his status as a United States citizen.  Appellant advised the trial court he was not under the influence of drugs or alcohol and was not taking any prescription medication.  The trial court found Appellant "to be alert, mature, educated, not under the influence of drugs or alcohol, able to hear and comprehend the proceedings."  Transcript Oct. 27, 2020 Change of Plea Hearing at 8.

{¶6}    The trial court reviewed the plea agreement with Appellant.  The trial court asked Appellant, "Is that your understanding of the agreement that you have with the State in this case?"  *Id.* at 9.  Appellant responded, "Yes, sir."  *Id.*  The trial court then asked Appellant if there was anything else he thought was part of the agreement which he felt had been overlooked or not discussed.  Before Appellant answered, the video

component began to work and he was able to see the trial court and counsel for the parties. Asked again if there was anything else he thought was part of the agreement which he felt had been overlooked or not discussed, Appellant answered, "No. I understand. It was thoroughly explained to me. I understand everything." *Id.* The trial court asked Appellant, "Is it your desire, then, to withdraw your plea of not guilty and enter a plea of guilty here to the charge of aggravated robbery, a felony of the first degree, with the firearm specification?" *Id.* 9-10. Appellant answered, "Yes, sir." *Id.* at 10.

**{¶7}** The trial court provided Appellant with an opportunity to explain what happened on August 26, 2019, which led to the charge. As Appellant described the events, he explained he approached the clerk at the checkout counter at an Aldi store and "pulled out the fake handgun and demanded money." *Id.* at 11. When asked if he informed the clerk he had a handgun, Appellant explained, "Well, actually I had – I had it out, so she seen it." *Id.* Thereafter, the prosecutor described the events, noting Appellant "placed a small revolver to the cashier's head while demanding the cash and was able to flee with approximately $1200." *Id.* at 12. The prosecutor added, "There was no indication the gun was fake. He used it and threatened it in a manner in which the victim felt that it was a real gun, and the gun was never recovered. Therefore, we feel that the firearm specification is appropriate as it is." *Id.*

**{¶8}** When the trial court asked Appellant if the facts sounded accurate, Appellant stated, "Yes, except for it wasn't – it wasn't a real gun. That's why I had to make it seem real." *Id.* at 12-13. Appellant then admitted he did not tell the clerk the gun was not real and acknowledged she had no reason to believe the gun was not real. Thereafter, the trial court engaged in the Crim. R. 11 colloquy, accepted Appellant's plea,

and found him of one count of aggravated robbery and the attendant firearm specification. The trial court scheduled a sentencing hearing for November 30, 2020.

{¶9} The sentencing hearing proceeded as scheduled. Pursuant to the plea agreement, the state made no specific recommendation as to Appellant's sentence. Appellant was provided with an opportunity to address the court. The victim was present and gave a full impact statement. The trial court sentenced Appellant to a mandatory three-year period of incarceration on the firearm specification and a mandatory indefinite period of incarceration of ten to fifteen years on the aggravated robbery charge. Because Appellant was serving a period of post-release control for an unrelated offense at the time of the offense, the trial court terminated the post-release control and imposed a prison term of 365 days. The trial court ordered the mandatory three-year term for the firearm specification be served prior and consecutive to the other prison terms imposed. The trial court also ordered the 365-day prison term on the post-release control be served consecutive to the aggravated robbery sentence.

{¶10} The trial court memorialized Appellant's sentence via Judgment Entry on Prison Sentence filed December 1, 2020.

I. LEFTWICH'S PLEA SHOULD BE VACATED BECAUSE IT WAS NOT KNOWING, VOLUNTARY, OR INTELLIGENT.

II. LEFTWICH WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

III. LEFTWICH'S PLEA TO AGGRAVATED ROBBERY AND THE ATTACHED FIREARM SPECIFICATION SHOULD BE VACATED,

BECAUSE THE TRIAL COURT DID NOT COMPLY WITH CRIM. R. 43 AND LEFTWICH'S DUE PROCESS RIGHT TO BE PRESENT DURING THE CRITICAL STAGE.

I, II

**{¶11}** Because Appellant's first and second assignments of error involve similar analysis, we shall address said assignments of error together.  In his first assignment of error, Appellant asserts his plea should be vacated as it was not knowingly, voluntarily, or intelligently made.  In his second assignment of error, Appellant maintains trial counsel was ineffective for allowing him to plead guilty.

*Crim. R. 32.1 Motion to Withdraw Plea*

*Post-Sentence Standard of Review*

**{¶12}** Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A motion made pursuant to Crim.R. 32.1 is left to the sound discretion of the trial court. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of the syllabus. Thus, we review the trial court's decision denying Appellant's motion under an abuse of discretion standard. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32.

**{¶13}** The standard upon which the trial court is to review a request for a change of plea after sentence is whether there is a need to correct a manifest injustice. *State v. Marafa*, 5th Dist. Stark Nos. 2002CA00099 and 2002CA00259, 2003-Ohio-257, ¶ 8.

"Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process."  *State v. Eckley*, 5th Dist. Ashland No. No. 17–COA–009, 2017-Ohio-8455, ¶ 19, citing *State v. Williams*, 10th Dist. Franklin No. 03AP–1214, 2004–Ohio–6123, ¶ 5. Under the manifest injustice standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. *State v. Aleshire*, 5th Dist. Licking No. 09-CA-132, 2010-Ohio-2566, 2010 WL 2297917, ¶ 60, *citing State v. Smith*, supra at 264. The accused has the burden of showing a manifest injustice warranting the withdrawal of a guilty plea. *Smith, supra,* at paragraph one of the syllabus.

*Ineffective Assistance of Counsel*

*Standard of Review*

{¶14}  A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). In order to prevail on a claim of ineffective assistance of counsel, an appellant must show counsel's performance fell below an objective standard of reasonable representation and, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, an appellant must show counsel's conduct so undermined the proper functioning of the adversarial process the proceedings cannot be relied upon as having produced a just result. *Id.* In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley* at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given

case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

**{¶15}** In order to warrant a reversal, an appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell* (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, quoting *Strickland* at 697.

### Analysis

**{¶16}** Appellant submits "the colloquy between the trial court and Leftwich demonstrates Leftwich genuinely did not understand he was admitting when pleading guilty that the 'toy gun' was a 'deadly weapon' necessary to meet that element of aggravated robbery." Brief of Appellant at 6. Appellant adds, he "genuinely did not subjectively understand the nature of the charge against him. * * * and no fact in the colloquy provided for why this toy gun might meet the requirements of the specification, his colloquy likewise raises the genuine probability that he did not understand what the prosecutor must prove for his specification either." *Id.* at 7.

**{¶17}** In support of his position, Appellant relies upon *State v. Riddle*, 2nd Dist. Miami No. 2016–CA–6, 2017-Ohio-1199, 88 N.E.3d 475, in which the Second District Court of Appeals found:

A plea may be involuntary if the accused " 'has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 42, quoting *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), fn. 13. "Thus, 'a plea does not qualify as intelligent unless a criminal defendant first receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." ' " *Id.*, quoting *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941). "In determining whether a defendant understood the charge, a court should examine the totality of the circumstances." (Citations omitted.) *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 56.

Id. at ¶ 28.

**{¶18}** In *Riddle*, the appellant entered a guilty plea to aggravated burglary. The aggravating factor involved the use of a deadly weapon in the commission of the burglary. The gun the appellant used in the commission of the offense was fake. During the plea hearing, the state represented, "*He did advise that the gun he used was not a real gun*

*and that he had thrown it into a ditch. It was later recovered and found to be, in fact, a fake gun.*" *Id.* at ¶ 4. (Emphasis in original). Further, the record did not establish the appellant used the fake gun in a manner in which it could have been capable of inflicting death, such as a bludgeon. On appeal, the appellant argued trial counsel was ineffective for advising him to plead guilty to a charge which, based upon the state's presentation of the facts, would not have been supported had he gone to trial. *Id.* at ¶ 24.

**{¶19}** The *Riddle* Court found trial counsel was ineffective for failing to recognize the complete defense to the aggravated burglary charge and advising the appellant to enter a guilty plea. *Id.* at ¶ 40. The Court held trial counsel's failure to recognize this defense and advise the appellant accordingly satisfied the deficient performance element of his ineffective assistance claim. The Court also found there was a reasonable likelihood the appellant would not have entered a guilty plea if he had been advised of this possible defense; therefore, the prejudice element of his ineffective assistance claim was established. The *Riddle* Court concluded, because trial counsel provided ineffective assistance relative to the guilty plea, the appellant did not knowingly, intelligently, and voluntarily enter the plea. *Id.* at ¶ 40-42.

**{¶20}** We find *Riddle*, supra, to be factually distinguishable from the matter sub judice. At the plea hearing, the following exchange occurred between the trial court and Appellant:

> THE COURT: Okay. So what did you have, a gun? Did you have a firearm?
>
> [APPELLANT]: It wasn't a real gun.

THE COURT: Was it – It appeared to be a gun?

[APPELLANT]: Yeah, it looked like one * * *

THE COURT: And did you – you went to Aldi?

[APPELLANT]: Yes, sir.

THE COURT: And what did you do when you got there?

[APPELLANT]: Basically, I just, you know – I went to the counter, and I – and I approached a clerk; and I pulled out the fake handgun and demanded the money. And I – and I fled afterwards.

THE COURT: And did you – You indicated to them, obviously, that you had a handgun, right?

[APPELLANT]: Well, actually I had – I had it out, so she seen it.

* * *

THE COURT: Okay. Mr. Walker, facts to add?

MR. WALKER: Yes, Your Honor.

On August 26, 2019, approximately 8:23 p.m., [Appellant] entered the Aldi grocery stored [sic] located at 9965 Sawmill Parkway in Powell, Ohio, walked around the store for approximately five minutes, proceeded to the register where he demanded cash. He placed a small revolver to the cashier's head while demanding the cash and was able to flee with approximately $1200.

His identification was confirmed later through various means, including his own admission at this point.

There was no indication the gun was fake. He used it and threatened it in a manner in which the victim felt that it was a real gun, and the gun was never recovered. Therefore, we feel that the firearm specification is appropriate as it is.

Tr. at 10-12.

**{¶21}** When the trial court asked Appellant if the facts sounded accurate, Appellant stated, "Yes, except for it wasn't – it wasn't a real gun. That's why I had to make it seem real." *Id.* at 12-13. Appellant then admitted he did not tell the clerk the gun was not real and acknowledged she had no reason to believe the gun was not real.

**{¶22}** Unlike in *Riddle*, supra, the state herein did not concede the gun used by Appellant during the commission of the offense was fake or a toy. Appellant's gun was never located. Appellant's protestation of innocence does not guarantee he would not have been found guilty at trial because Appellant represented to the victim at the time of the offense the gun was real. The victim's belief the gun was real would be sufficient evidence with which a jury could convict Appellant.

**{¶23}** Further, "[a] guilty plea admits the facts set forth in the indictment, not the facts set forth at the plea hearing." *State v. Greathouse*, 2nd Dist. Greene App. No. 2003 CA 80, 158 Ohio App.3d 135, 2004-Ohio-3402, 814 N.E.2d 502, ¶ 8 (Citation omitted). Pleading guilty is "an admission of every material fact well pleaded in the indictment, dispensing with the necessity of proving them, and authorizing the court to proceed to judgment." *Id.* at ¶ 7 (Citations omitted.). The Indictment charging Appellant contained all the elements of the offense of aggravated robbery.

**{¶24}** The record indicates Appellant was made aware of all of the elements of the offense of aggravated robbery and the attendant firearm specification to which he pled guilty via the Indictment and the rendition of the facts at the plea hearing. We find the facts set forth in the Indictment as well as those recited by the state at the plea hearing support the "deadly weapon" element required for aggravated robbery. In addition, the trial court complied with the mandates of Crim.R. 11(C) at the plea hearing. Accordingly, we find Appellant's plea was knowingly, intelligently, and voluntarily made; therefore, we cannot conclude trial counsel rendered ineffective assistance of counsel by advising him to plead guilty to the aggravated robbery charge and the attendant firearm specification.

**{¶25}** Appellant's first and second assignments of error are overruled.

III

**{¶26}** In his third assignment of error, Appellant argues his plea should be vacated because the trial court failed to comply with Crim. R. 43, thereby violating his due process right to be present at this critical stage of the criminal proceeding.

**{¶27}** It is axiomatic an accused has a fundamental right to be present at all critical stages of his criminal trial. Section 10, Article I of the Ohio Constitution; Crim.R. 43(A) ("defendant must be physically present at every stage of the criminal proceeding and trial"); *State v. Hale,* 119 Ohio St.3d 118, 892 N.E.2d 864, 2008–Ohio–3426, ¶ 100. The entering of a guilty plea is a critical stage of a criminal proceeding. See, *State v. Davis*, 8th Dist. Cuyahoga No. 110301, 2021-Ohio-4015, ¶ 23 ("A criminal defendant has the right to effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea.").

**{¶28}** Crim.R. 43(A)(2) permits the participation of a felony defendant by remote contemporaneous video for any proceeding if all of the following apply:

(a) The court gives appropriate notice to all the parties;

(b) The video arrangements allow the defendant to hear and see the proceeding;

(c) The video arrangements allow the defendant to speak, and to be seen and heard by the court and all parties;

(d) The court makes provision to allow for private communication between the defendant and counsel. The court shall inform the defendant on the record how to, at any time, communicate privately with counsel. Counsel shall be afforded the opportunity to speak to defendant privately and in person. Counsel shall be permitted to appear with defendant at the remote location if requested.

(e) The proceeding may involve sworn testimony that is subject to cross examination, if counsel is present, participates and consents.

**{¶29}** Appellant asserts the plea hearing failed to comply with Crim. R. 43 as he "pleaded guilty to a serious first-degree felony crime, and an attached firearm specification, by *audio* transmission. * * * [Appellant] could not 'see the proceedings.' Crim. R. 43(A)(2)(B). He could not be 'seen' by 'the court and all parties.' Crim. R. 43((A)(2)(d). And he did not waive, 'in writing or on the record,' his right to be physically present. Crim. R. 43(A)(3)." Appellant's Brief at 11 (Emphasis added).

**{¶30}** The United States and Ohio Supreme Courts have both recognized a defendant's absence does not necessarily result in prejudicial or constitutional error. "[T]he presence of the defendant [in a prosecution for felony] is a condition of due process to the extent a fair and just hearing would be thwarted by [her] absence, and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (Bracketed material in original); *United States v. Gagnon*, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). Thus, the defendant's absence in violation of Crim.R. 43(A), although improper, can constitute harmless error where he suffers no prejudice. *State v. Williams* (1983), 6 Ohio St.3d, 281, 285-87, 452 N.E.2d 1323.

**{¶31}** At the commencement of the October 27, 2020 Change of Plea Hearing, the trial court stated:

> Good morning.  We are on the record.
>
> This is State of Ohio versus Rayshawn L. Leftwich, 20CRI 05 0290. We have Mr. Leftwich here today by videoconference.  We have Mr. Walker here on behalf of the State.  Mr. Carson is here by videoconference on behalf of Mr. Leftwich.  We're here today for a plea hearing in this case.
>
> Mr. Leftwich, can you see and hear me today from where you are?
>
> [APPELLANT]: Oh, right now I'm trying to find it.  Can you hear me?
>
> THE COURT: I can hear you.  What screen are you looking at?
>
> [APPELLANT]: I'm on the Zoom.
>
> THE COURT: Who do you see?  Who do you see?
>
> [APPELLANT]: It just says, "Join a meeting and sign in."

\* \* \*

THE COURT: So you don't see anybody on your screen, then?

[APPELLANT]: No, sir.  I can just hear you guys.

THE COURT: We're going to call and see if somebody can come in and help you.

[APPELLANT]: All right.  Thank you.

(Recess taken.)

Tr. at 3-4.

**{¶32}** After the recess, the trial court went back on the record, noting Appellant "is here today by audio.  Videoconference is not working."  Tr. at 4.  Appellant confirmed he could hear the trial court, his attorney, and the prosecutor.  *Id.* at 5.  The trial court waived Appellant's physical appearance in the courtroom pursuant to the Ohio Supreme Court's July 31, 2020 Administrative Action issued as a result of the COVID pandemic.

**{¶33}** The prosecutor placed the plea agreement on the record; defense counsel confirmed such was his understanding of the plea.  The trial court administered the oath to Appellant.  Appellant verified his date of birth, personal identifiers, education level, ability to read and write, and his status as a United States citizen.  Appellant advised the trial court he was not under the influence of drugs or alcohol and was not taking any prescription medication.  The trial court found Appellant "to be alert, mature, educated, not under the influence of drugs or alcohol, able to hear and comprehend the proceedings."  Tr. at 8.

{¶34} After reviewing the plea agreement with Appellant, the trial court inquired, "Is that your understanding of the agreement that you have with the State in this case?" *Id.* at 9. Appellant responded, "Yes, sir." *Id.* The trial court then asked Appellant if there was anything else he thought was part of the agreement which he felt had been overlooked or not discussed. Before Appellant answered, the video component began to work and he was able to see the trial court, his attorney, and the prosecutor. For the remainder of the hearing, Appellant could see and hear the proceedings, and he could be seen and heard during the proceedings. Thereafter, the trial court conducted an extensive and thorough Crim. R. 11 colloquy, in which Appellant actively participated.

{¶35} Upon thorough review of the Transcript of the October 27, 2020 Change of Plea Hearing, we find the brief period during which Appellant could only hear the proceedings did not result in prejudicial or constitutional error. We further find any error in the trial court's proceeding with the hearing while Appellant did not have video capabilities was harmless.

{¶36} Appellant's third assignment of error is overruled.

{¶37} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Hoffman, P.J.
Delaney, J. and
Baldwin, J. concur